IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | |
|---|---|
| THERESA D. HUSKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 06-4065-JAR-JTR |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |


REPORT AND RECOMMENDATION


Plaintiff seeks review of a final decision of the
Commissioner of Social Security (hereinafter Commissioner)
denying expedited reinstatement of her disability benefits which
were ceased on a medical basis effective Dec. 2000, and denying
her subsequent applications for benefits received by the Social
Security Administration on July 31, 2002.[2]  The matter has been

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is
substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C.
§ 405(g), no further action is necessary.

[2]The Commissioner argues that the only issue remaining in
this case is the ALJ's decision denying supplemental security
income (SSI).  (Comm'r Br., 2 n.2).  Plaintiff disagrees, arguing
that an application for SSI is an application for all programs
administered by the Social Security Administration and,
therefore, includes an application for disability insurance

referred to this court for a report and recommendation.  The
court recommends the Commissioner's decision be REVERSED and
JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C.
§ 405(g) REMANDING the case for further proceedings consistent
with this opinion.

**I.   Background**

    Plaintiff was granted DIB because of depression, chronic
fatigue, and multiple hospitalizations for depression and
recurrent panic attacks effective May, 1993.  (R. 170).
Plaintiff began working again in July, 1995 and completed her
trial work period in March, 1996.  (R. 171).  She worked at the
substantial gainful activity level from April to June, 1998, and
from Dec., 1999 through May, 2001.  Id.  A medical continuing
disability review was begun, and plaintiff "failed to cooperate
with the review process so her claim was ceased on a medical
basis effective December, 2000."  (R. 171).

    Plaintiff requested reconsideration, arguing that her
disability continued due to depression and anxiety and additional
impairments of fibromyalgia, osteoarthritis, and chronic fatigue.

---

benefits (DIB).  The court need not decide that question because
when plaintiff filed her SSI application she filed an application
for DIB (R. 186-89) and a request for reinstatement of Title II
benefits.  (R. 180-81).  Moreover, by operation of law if the
Commissioner determines an individual is not entitled to
reinstatement of benefits, a request for reinstatement
constitutes an application for benefits.  42 U.S.C.
§ 423(i)(2)(B).  Therefore, the court finds that plaintiff's
applications for both DIB and SSI are at issue here.

Id.  A hearing was held on Apr. 12, 2002, and a decision was issued July 12, 2002.  (R. 164-77).  In the notice of decision, the Commissioner stated, "We find that your disability did not end.  Therefore, your benefits will continue."  (R. 165).  The "CONCLUSION" of the decision stated succinctly, "THE CLAIMANT IS FOUND TO BE DISABLED."  (R. 176)(capitalization in original).

Despite the apparent success of her request for reconsideration, plaintiff subsequently filed four documents with the Social Security Administration including a "Statement" that she wanted "to file for Expedited Reinstatement (EXR) rather than file a new claim for disability benefits because I want the provisional payments that begin right away" (R. 178), a "Request for Reinstatement - Title II" (R. 180-81), an "Application for Supplemental Security Income" (R. 182-85), and an "Application for Disability Insurance Benefits."  (R. 186-89).  The "Application for Disability Insurance Benefits" is undated (R. 189), the other documents are dated July 26, 2002 (R. 179, 180, 185), and all of the documents are date stamped, "Hays, KS SSA District Office 776," Jul. 31, 2002.  (R. 178, 180, 182, 186).

The Commissioner notified plaintiff in a letter dated Dec. 30, 2002, that she would no longer receive "provisional" benefits after Dec. 2002.[3]  (R. 191-94).  Plaintiff's applications were

_____

[3]In the decision at issue before this court, the ALJ stated, "In a letter dated August 6, 2002, [plaintiff] was informed that she would receive provisional social security benefits for six

denied (R. 200-06) and she requested reconsideration (R. 207-08) which was also denied.  (R.209-16).[4]  Plaintiff requested a hearing (R. 217-18) which was held on Oct. 26, 2004.  (R. 20, 644-64).  At the hearing plaintiff was represented by a non-attorney representative, and testimony was taken from plaintiff and a vocational expert.  (R. 20, 645).

The Administrative Law Judge (ALJ) issued a decision March 22, 2005, finding that disability insurance benefits were correctly terminated in Dec. 2000 (R. 29), that supplemental security income benefits were properly terminated due to performance of substantial gainful activity (R. 30), and that expedited reinstatement provisions do not apply (R. 29); and denying plaintiff's applications.  (R. 31).  Plaintiff requested and was denied review of the ALJ's decision by the Appeals Council.  (R. 9-12).[5]  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 9); Threet v. Barnhart, 353

_____

months, based on her request for reinstatement."  (R. 19).  The ALJ did not provide a citation to the record to support this statement, and the court is unable to locate any such letter in the record.

[4]The record contains a "Disability Determination and Transmittal," and an "Explanation of Determination" regarding the application for DIB (R. 209-10), but there is no "Disability Insurance Benefits Notice of Reconsideration."

[5]The "Court Transcript Index" in the record indicates the "Request for Review of Hearing Decision" was dated May 11, 2005 but was not available for inclusion in the Administrative Record.

F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial
review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.
§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of
the Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive."  The court must determine whether
the factual findings are supported by substantial evidence in the
record and whether the ALJ applied the correct legal standard.
White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).
Substantial evidence is more than a scintilla, but less than a
preponderance, it is such evidence as a reasonable mind might
accept to support the conclusion.  Gossett v. Bowen, 862 F.2d
802, 804 (10th Cir. 1988).  The court may "neither reweigh the
evidence nor substitute [it's] judgment for that of the agency."
White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human
Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of
whether substantial evidence supports the Commissioner's
decision, however, is not simply a quantitative exercise, for
evidence is not substantial if it is overwhelmed by other
evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d
at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which

prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2004).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.[6]  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not

_____

[6]A termination of benefits decision must be made using the seven or eight-step sequential evaluation process applying the medical improvement standard.  42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  An expedited reinstatement decision must also be made using the medical improvement standard.  42 U.S.C. § 423(i)(3)(applying the provisions of 42 U.S.C. § 423(f) to reinstatement of entitlement).

Here, however, plaintiff "has chosen not to contest the ALJ's ruling as to the termination of her prior award of disability benefits for reasons not herein addressed."  (Pl. Br., 25).  Plaintiff contests only the ALJ's decision denying her claim for a period of disability commencing thereafter, and denying her applications for DIB and SSI based upon that claim.  (Pl. Br., 25).  Therefore, the court reviews only the ALJ's application of the five-step sequential evaluation process for evaluating plaintiff's claims.

disabled, evaluation under a subsequent step is not necessary."
Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of an impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to properly weigh the opinion of her treating psychiatrist, erred in evaluating

-7-

rheumatoid arthritis and borderline personality disorder at step two of the sequential process, erred in evaluating affective disorder and borderline personality disorder at step three of the process, and improperly evaluated the credibility of plaintiff's allegations of symptoms.  She asks the court to reverse the Commissioner's final decision, and to remand for an immediate award of benefits.  The Commissioner argues that the ALJ properly determined the severity of plaintiff's impairments, properly evaluated the opinions of the treating psychiatrist, properly determined that plaintiff's impairments do not meet or equal a listed impairment, and properly determined the credibility of plaintiff's allegations of symptoms; and that substantial evidence in the record as a whole supports the ALJ's decision. The court will address the alleged errors in the order they would be reached in applying the sequential evaluation process.

## III. Treating Psychiatrist's Opinion

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of examining physicians are

-8-

generally given more weight than the opinions of physicians who
have merely reviewed the medical record.  Robinson v. Barnhart,
366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d
1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d
407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784,
789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d
955, 963 (3d Cir. 1984)).

     "If [the Commissioner] find[s] that a treating source's
opinion on the issue(s) of the nature and severity of [the
claimant's] impairment(s) [(1)] is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and
[(2)] is not inconsistent with the other substantial evidence in
[claimant's] case record, [the Commissioner] will give it
controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);
see also, Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec.
Reporting Serv., Rulings 111-15 (Supp. 2006).

     The Tenth Circuit has explained the nature of the inquiry
regarding a treating source's medical opinion.  Watkins v.
Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  First, the
ALJ determines "whether the opinion is 'well-supported by
medically acceptable clinical and laboratory diagnostic
techniques.'" Id. at 1300 (quoting SSR 96-2p).  If well-
supported, the ALJ must decide whether the opinion is consistent
with other substantial evidence in the record.  Id. (citing SSR

-9-

96-2p).  "[I]f the opinion is deficient in either of these
respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling
weight, the inquiry does not end.  Id.  A treating source opinion
is "still entitled to deference and must be weighed using all of
the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.
Those factors are: (1) length of treatment relationship and
frequency of examination; (2) the nature and extent of the
treatment relationship, including the treatment provided and the
kind of examination or testing performed; (3) the degree to which
the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the
opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),
416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211,
1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human
Serv., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in
the decision for the weight he gives the treating source opinion.
Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion
completely, he must then give 'specific, legitimate reasons' for
doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th

-10-

Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Here, the ALJ stated that he had considered the opinion of Dr. Harper but did not give it controlling weight because it "is inconsistent with the evidence in its entirety," because it "is primarily based on the claimant's subjective report of her mental status," and because "the claimant's activities of daily living are inconsistent with the claimant's report of disabling fatigue, depression, and anxiety." (R. 28). He decided that he need not recontact Dr. Harper because he found her treatment records and opinion adequate for consideration but not persuasive that plaintiff is disabled. Id. The ALJ stated that he had considered the opinions of the state agency medical consultants and concurred with those opinions because they are consistent with the evidence in its entirety. Id. Plaintiff claims the ALJ erred in disregarding the opinion of her treating psychiatrist, Dr. Harper, in favor of the opinions of the state agency psychologists. The Commissioner argues that the "ALJ properly discredited the opinion of Dr. Harper because it was 'inconsistent with the evidence in its entirety' and was 'primarily based on [Plaintiff's] subjective report of her mental status.'" (Comm'r Br., 16). He also argues that Dr. Harper's opinion was properly discredited "because it was inconsistent with her own treatment records." (Comm'r Br., 17).

To the extent the Commissioner argues that the ALJ rejected Dr. Harper's opinion because it is inconsistent with her treatment notes, the court will not consider that argument because the ALJ did not rely upon it as a reason to discount Dr. Harper's opinion.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005).

Moreover, were the court to consider the Commissioner's argument, the evidence suggests the ALJ found otherwise.  The ALJ stated that Dr. Harper's opinion "is inconsistent with the evidence in its entirety," but said nothing regarding the consistency, or lack thereof, between the opinion and the psychiatrist's own treatment notes.  Had the ALJ found Dr. Harper's opinion inconsistent with her own treatment notes, that would have been an ambiguity likely requiring the ALJ to recontact the psychiatrist for resolution.  The ALJ stated he found the information received adequate to make a determination

without a need to recontact the psychiatrist.   Therefore, the court concludes the ALJ did not find Dr. Harper's opinion inconsistent with her own treatment notes.

The ALJ stated that he did not give controlling weight to Dr. Harper's opinion, but he did not discuss of what lesser weight he determined the opinion was worthy.   However, he concurred with the opinions of the state agency consultants which are contrary to that of Dr. Harper.   Therefore, the court concludes that the ALJ completely rejected Dr. Harper's opinion.

Dr. Harper diagnosed plaintiff with major depression and borderline personality disorder (R. 229, 233, 238, 241-42, 622, 623), opined that plaintiff's impairments meet Listings 12.04(A, B, & C) and 12.08(A & B), and opined that plaintiff is markedly limited in six work-related mental tasks and moderately limited in three work-related mental tasks.   (R. 617-21).   In his step three analysis, the ALJ stated that he had considered Listing 12.04 (affective disorders, including depressive syndrome), and concluded that plaintiff's symptoms do not meet the "B" criteria of the listing.   (R. 26).   In making his decision, an ALJ must consider all the evidence, and discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely, and significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th

Cir. 1984)).  Here, the ALJ did not mention the "C" criteria of Listing 12.04 and did not mention Listing 12.08 at all.  It is not clear from the decision that the ALJ considered Dr. Harper's opinion regarding Listings 12.04(C) or 12.08.  Yet, that opinion is evidence which is significantly probative regarding whether plaintiff's mental impairment meets or equals a listed impairment.  Failure to discuss it is reversible error.

Finally, the ALJ rejected Dr. Harper's opinion because it "is primarily based on the claimant's subjective report of her mental status."  (R. 28).  However, the ALJ cites to no medical evidence in support of this finding.  The Tenth Circuit has expressed displeasure with an ALJ's tacit equation of a psychiatrist's findings with plaintiff's subjective report, "as if the former merely parroted the latter without any medical judgment/assessment intervening.  Stephens v. Apfel, No. 97-6090, 1998 WL 42524 at *1 (10th Cir. Feb. 4, 1998).  That is the error present here.  The accepted clinical technique for diagnosing a mental impairment is to assess the existence and severity of symptoms and signs identified by the American Psychiatric Association in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV).  DSM-IV at xxii-xxiv, 1-9. "This assessment is usually based on a patient's subjective reports and the [psychiatrist's] own observations."  Schwarz v. Barnhart, 70 Fed. App'x. 512, 518 (10th Cir. 2003).  The

-14-

regulations specify that a psychiatric opinion may rest either on observed signs and symptoms or on psychological tests.  20 C.F.R. Subpart P, App. 1 § 12.00B; <u>see also</u>, 20 C.F.R. §§ 404.1508, 416.908(necessity of medical evidence consisting of signs, symptoms, and laboratory findings); 404.1528, 416.928 (defining signs, symptoms, and laboratory findings).  Since Dr. Harper's opinion rested on the use of a diagnostic technique accepted by both the psychiatric community and the regulations, the ALJ erred in equating that technique to mere acceptance of plaintiff's reports.  Where the ALJ reaches such a conclusion without stating a specific evidentiary basis, he has engaged in speculative assumption, impermissibly based upon his own lay opinion. <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004); <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 823-24 (10th Cir. 2005). Remand is necessary for the Commissioner to properly evaluate the opinions of the treating psychiatrist, Dr. Harper.

**IV.  Step Two**

At step two, the ALJ must determine whether any of plaintiff's medically determinable impairments, or a combination thereof, is "severe."  <u>Id.</u>, §§ 404.1520(c), 416.920(c).  An impairment is not severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing

with changes in a routine work setting.  Id., §§ 404.1521,
416.921.  The Tenth Circuit has determined that to establish a
"severe" impairment, plaintiff must make only a "de minimis"
showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).
Plaintiff need only show that an impairment would have more than
a minimal effect on her ability to do basic work activities.
Williams, 844 F.2d at 751.  However, she must show more than the
mere presence of a condition or ailment.  Id. (citing Bowen v.
Yuckert, 482 U.S. 137, 153 (1987)).

Plaintiff makes two allegations of error at step two.
First, she argues that the ALJ erred in failing to find
borderline personality disorder is a severe impairment in this
case.  As the court found above, the ALJ did not mention
borderline personality disorder (Listing 12.08) despite Dr.
Harper's diagnosis, and her opinion that plaintiff met the
listing level severity for this impairment.  The Commissioner
argues that although the ALJ did not discuss borderline
personality disorder, plaintiff does not point to symptoms of her
personality disorder, separate from her affective disorder, which
were not considered by the ALJ.  He argues that the ALJ included
a mental impairment among plaintiff's severe impairments and
considered the severity of plaintiff's psychiatric symptomatology
in toto and, therefore, there is no error.

The Commissioner's argument misses the significance of the fact that the decision is silent regarding borderline personality disorder.  Had the ALJ acknowledged that plaintiff has been diagnosed with borderline personality disorder along with other mental impairments and then applied the psychiatric review technique to the mental impairments as a group, there may be a basis to consider such an approach proper.  Here, however, the ALJ discussed plaintiff's depression, anxiety, panic attacks, and stress, but he made no mention of borderline personality disorder.  Moreover, he did not mention the opinion of Dr. Harper with regard to borderline personality disorder.  Thus, the court is unable to determine whether the ALJ was even aware of the evidence concerning borderline personality disorder and Dr. Harper's opinion with regard to it.  Therefore, the court has no basis upon which to decide that the ALJ considered all of plaintiff's mental symptomatology <u>in toto</u>.  Remand is necessary for the Commissioner to properly consider the severity of plaintiff's borderline personality disorder at step two and thereafter in the sequential evaluation process.

Second, plaintiff claims the ALJ erred in not finding that plaintiff's rheumatoid arthritis is severe.  She argues that the evidence is sufficient to establish at least a "<u>de minimis</u>" effect on her ability to perform basic work activities.  Here, the ALJ found that plaintiff's allegations of rheumatoid

arthritis are not medically determinable.  The Commissioner argues that substantial evidence supports the ALJ's finding and even if the impairment were medically determinable, any error is harmless because the ALJ did not discredit any of plaintiff's allegations of symptoms solely because they were attributed to rheumatoid arthritis.

Disability may be found only if a claimant has a medically determinable impairment.  20 C.F.R. §§ 404.1505, 416.905.  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms."  20. C.F.R. §§ 404.1508, 416.908. Evidence to establish a medically determinable impairment must come from "acceptable medical sources" such as licensed physicians, psychologists, or similar professional medical care providers.  Id., §§ 404.1513(a), 416.913(a). "[S]ymptom-related limitations and restrictions must be considered at [] step [two] of the sequential evaluation process, provided that the individual has a _medically determinable impairment(s)_ that could reasonably be expected to produce the symptoms."  SSR 96-3p, West's Social Security Reporting Service, Rulings 117 (Supp. 2006)(emphases added).  Therefore, if an impairment is not

-18-

medically determinable, it cannot be a "severe" impairment within the meaning of the Act, and symptom-related limitations and restrictions allegedly resulting from that impairment cannot be considered at step two of the sequential process.

Therefore, the court must first determine whether the ALJ erred in finding rheumatoid arthritis not medically determinable on the facts of this case.  As plaintiff argues, in April, 2002 Dr. Beggs diagnosed her with rheumatoid arthritis despite the fact that rheumatoid factor tests were negative, noting that recent lab tests had shown an elevated ANA titer and somewhat elevated sedimentation rate, and that "one did not diagnose rheumatoid arthritis on the basis of serological tests such as rheumatoid factor, but that rheumatoid arthritis was a clinical diagnosis." (R. 317).  In June, 2004 Dr. Taylor listed an "assessment" of rheumatoid arthritis.  (R. 590).  In the "Disability Hearing Officer's Decision," of Jul 12, 2002, the hearing officer decided that plaintiff's recently diagnosed rheumatoid arthritis was a severe impairment.  (R. 174).  The ALJ noted the hearing officer's report in which she mentioned the April, 2002 examination by which plaintiff had been diagnosed with "classical rheumatoid arthritis."  (R. 23).  The ALJ also discussed a consultative examination report dated Nov. 4, 2002 in which it was noted that plaintiff was not taking any significant arthritis medication, was taking only over-the-counter ibuprofen,

-19-

her hands and wrists were completely normal, and "[t]here were no findings suggestive of any kind of degenerative changes other than both the SI joints."  (R. 23); see also (R. 328-30).  He concluded that rheumatoid arthritis is not medically determinable in this case; apparently relying on the consultative examination report but without specific explanation, without specifically discounting Dr. Beggs's diagnosis or Dr. Taylor's "assessment," and without explaining why he reached a different conclusion than did the hearing officer.

Dr. Beggs and Dr. Taylor are acceptable medical sources. Their "diagnosis" and "assessment" relate to the physiological abnormality of rheumatoid arthritis and are based upon acceptable clinical and laboratory diagnostic techniques established by medical evidence consisting of signs, symptoms, and laboratory findings, not just plaintiff's statement of symptoms.  Therefore, in accordance with the regulations, rheumatoid arthritis is a medically determinable impairment in this case.  That the record also contains evidence that plaintiff does not take significant arthritis medication, evidence that plaintiff's wrists and hands are normal, and evidence suggestive of no degenerative changes except in the SI joints, speaks to the issue of whether the impairment is "severe," not whether it is medically determinable. On the facts of this case, it was error for the ALJ to find rheumatoid arthritis is not medically determinable.

The court cannot find the error was harmless.  SSR 96-3 provides that symptom-related limitations will only be considered if the impairment to which they are related is medically determinable.  Absent evidence to the contrary, the court will assume the ALJ properly applied the law.  Therefore, because the ALJ found rheumatoid arthritis not medically determinable, the court must assume that the ALJ did not consider symptoms related to it in his decision.  Consequently, remand is necessary for the ALJ to properly evaluate rheumatoid arthritis at step two and subsequently.  The court does not intend to suggest that the Commissioner must find rheumatoid arthritis is a "severe" impairment, merely that on the record as it now stands rheumatoid arthritis is a medically determinable impairment in this case. Determination whether rheumatoid arthritis is "severe" within the meaning of the Act and regulations involves weighing the evidence which in the first instance is a responsibility of the Commissioner, not the court.

**V.   Step Three**

Plaintiff claims the ALJ erred at step three in failing to specifically mention and consider Listings 12.04(C)(2) and 12.08. She argues that the step three findings are beyond meaningful judicial review because the ALJ did not explain with specificity why he found plaintiff's condition does not meet or equal the severity of these listings which plaintiff specifically alleged

that she met.  (Pl. Br., 20) (citing Clifton v. Chater, 79 F.3d
1007, 1009-10 (10th Cir. 1996)).  The Commissioner argues that
the ALJ's decision is sufficient to provide meaningful judicial
review pursuant to the holding in Clifton because "the ALJ made
specific findings that Plaintiff's condition did not meet or
equal the criteria of Listing § 12.04."  (Comm'r Br., 18).

    In Clifton, the ALJ merely stated a summary conclusion that
plaintiff's condition did not meet or equal any Listing.
Clifton, 79 F.3d at 1009.  The court noted that "[s]uch a bare
conclusion is beyond meaningful judicial review."  Id.  The court
explained that the Commissioner is required to discuss the
evidence and explain his step three finding sufficiently for a
subsequent reviewer to determine whether the Commissioner applied
the correct legal standard and whether substantial evidence
supports the factual findings.  Id.  It concluded that absent
"ALJ findings supported by specific weighing of the evidence,
[the court] cannot assess whether relevant evidence adequately
supports the ALJ's conclusions . . . and whether he applied the
correct legal standard."  Id.

    As the Commissioner argues, the ALJ here found that
plaintiff's condition does not meet or equal Listing 12.04.  (R.
26).  Specifically, he found that plaintiff's condition does not
"meet the 'B' criteria of this medical listing."  Id.  The
decision at issue is clearly not as lacking in explanation as

that in <u>Clifton</u>.  That decision did not even mention the Listings considered.  Here, the ALJ specifically mentioned that he had considered Listings 12.04 and 1.02.  (R. 26).  He stated that plaintiff did not meet the "B" criteria of Listing 12.04, and explained that was because plaintiff did not have marked limitations in any of the four mental functional areas.  <u>Id.</u> However, as plaintiff points out, the ALJ did not mention the "C" criteria of Listing 12.04, and did not mention Listing 12.08 whatsoever.  Moreover, Dr. Harper, a treating psychiatrist, opined that plaintiff meets both Listing 12.04(C) and Listing 12.08.  Thus, the court is left to speculate as to what evidence and what rationale the ALJ relied upon to determine that plaintiff's condition does not meet Listings 12.04(C) and 12.08. As in <u>Clifton</u>, the determination is beyond meaningful judicial review.  Remand is necessary for the Commissioner to properly consider and explain the analysis regarding Listings 12.04(C) and 12.08 at step three of the sequential evaluation process.

## VI.  Credibility Determination

Plaintiff claims the ALJ erred in evaluating the credibility of plaintiff's allegations of symptoms resulting from her impairments.  Specifically, plaintiff argues that there is substantial evidence in the record to support her allegations, that the ALJ failed to properly analyze the regulatory factors for evaluating credibility and chose instead "to rely on isolated

parts of the record to justify his finding that Plaintiff was not credible." (Pl. Br., 22). The Commissioner argues that a factor-by-factor evaluation of the evidence is not required, that the ALJ articulated several bases for finding plaintiff's testimony only partly credible, and that the ALJ's determination must be affirmed because it is supported by substantial evidence in the record as a whole.

A proper credibility determination requires the weighing of all the relevant considerations in combination. Huston v. Bowen, 838 F.2d 1125, 1132 n.7 (10th Cir. 1988). In this case, a proper evaluation: of Dr. Harper's opinions with regard to plaintiff's mental impairments, of the severity of rheumatoid arthritis and bipolar personality disorder at step two, and of whether plaintiff's impairments meet or equal Listings 12.04(C) and 12.08 will likely be relevant to a determination of the credibility of plaintiff's allegations of disabling symptoms. Therefore, it would be premature for the court to attempt to review the ALJ's credibility determination. On remand, the Commissioner must evaluate plaintiff's credibility after evaluating Dr. Harper's opinions and performing a step two and step three evaluation as discussed herein. Moreover, because the court has determined that further evaluation of the evidence is necessary, it would be improper to order an immediate award of benefits as requested by

plaintiff.  <u>Sorenson v. Bowen</u>, 888 F.2d 706, 713 (10th Cir.
1989).

**IT IS THEREFORE RECOMMENDED** that JUDGMENT be entered
pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING
the Commissioner's decision and REMANDING the case for further
proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered
to counsel of record for the parties.  Pursuant to 28 U.S.C.
§ 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the
parties may serve and file written objections to this
recommendation within ten days after being served with a copy.
Failure to timely file objections with the court will be deemed a
waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>,
393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 18th day of June 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-25-